| | |
|---|---|
| U.S. MED SUPPLIES, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GERI-CARE PHARMACEUTICALS, CORP., )<br>GERI-CARE PHARMACEUTICAL )<br>SUPPLY CO, LLC, and RAKAA MEDICAL )<br>CO. LTD., )<br>)<br>Defendants. ) | **ORDER** |

On March 13, 2020, Geri-Care Pharmaceuticals, Corporation and Geri-Care Pharmaceutical Supply Co., LLC (collectively, "Geri-Care" or "defendants") moved to dismiss U.S. Medical Supplies, LLC ("USM") complaint under Federal Rule of Civil Procedure Rule 12(b)(2) [D.E. 11]. On April 17, 2020, USM responded in opposition [D.E. 13] and filed an affidavit and documents in support [D.E. 14]. On April 23, 2020, Geri-Care replied [D.E. 15]. On April 24, 2020, USM moved in the alternative to transfer venue to the Eastern District of New York [D.E. 16] and filed a memorandum in support [D.E. 17]. On May 1, 2020, Geri-Care responded [D.E. 19]. As explained below, the court denies Geri-Care's motion to dismiss for lack of personal jurisdiction and denies USM's motion to transfer.

I.

USM is a North Carolina limited liability company with offices in Raleigh, North Carolina. See Compl. [D.E. 2-3] ¶ 1. Geri-Care is a New York corporation with offices in New York and New Jersey. See id. at ¶¶ 2–3; Ackerman Aff. [D.E. 11-10] ¶ 2. Geri-Care produces, sells, and distributes

pharmaceutical products internationally. Geri-Care does not have an office, own property, or advertise in North Carolina. See Ackerman Aff. ¶ 3. Geri-Care does sell its products to North Carolina companies. Those sales comprise less than 5% of Geri-Care's business. See id. at ¶ 4. Additionally, Geri-Care sold vitamins to USM for $4,995 in 2011. See id. at ¶ 5.

One of Geri-Care's clients is the Kingdom of Saudi Arabia. See Compl. ¶ 10. In September 2015, USM agreed to purchase pharmaceutical products from Geri-Care for sale in Saudi Arabia. See id. at ¶ 14. To facilitate the arrangement, USM contacted Geri-Care. See Rosenburg Aff. [D.E. 11-9] ¶ 2. Geri-Care did not send any employee to North Carolina during negotiations. See id. Ultimately, Geri-Care entered a letter agreement with USM, and Geri-Care agreed to act as USM's "exclusive and sole agent for export" of pharmaceutical products to Saudi Arabia. See Compl. ¶¶ 14–15; Rosenburg Aff. ¶ 2. The Kingdom of Saudi Arabia, however, did not accept USM's bid concerning the pharmaceutical products. See Rosenburg Aff. ¶ 2.

USM alleges that Geri-Care breached the letter agreement when it sold pharmaceutical products to other companies for distribution to Saudi Arabia. One of the companies USM identifies is Rakaa Medical Co., Ltd. ("Rakaa"), a Saudi company with whom USM had a separate pharmaceutical distribution agreement. See Compl. ¶¶ 11–12, 18. USM alleges that Geri-Care and Rakaa enlisted another company, Health Stream, to conceal from USM the breach of their respective agreements. See id. at ¶¶ 20–21.

From September 2016 to January 2017, Geri-Care sold USM $21,521 worth of pharmaceutical products. See Ackerman Aff. ¶ 5. On February 7, 2018, Geri-Care agreed to manufacture, price, and package calcium carbonate tablets for USM and to act as USM's "exclusive distributor to the Kingdom of Saudi Arabia" for a two-year term. See Compl. ¶¶ 22–23. Geri-Care

2

again signed a letter agreement. See Rosenburg Aff. ¶ 3. As in 2015, all negotiations were handled via phone or email. See id. The Kingdom of Saudi Arabia approved this bid. Geri-Care sold USM calcium carbonate tablets worth $608,722. See id. The calcium carbonate tablets were not manufactured in North Carolina. Rather, Geri-Care bottled the tablets in New York, and USM sent a contractor shipping company to pick up and deliver the tablets to Saudi Arabia. See Ackerman Aff. ¶ 7.

USM alleges that Geri-Care breached its exclusivity obligation concerning the 2018 agreement and, with Rakaa, continues to conceal that breach. See Compl. ¶¶ 25–27. USM alleges seven causes of action: (1) breach of contract under North Carolina law against Geri-Care; (2) fraud and intentional misrepresentation/concealment under North Carolina law against Geri-Care and Rakaa; (3) constructive fraud under North Carolina law against Geri-Care and Rakaa; (4) breach of fiduciary duties and the duty of good faith and fair dealing under North Carolina law against Geri-Care and Rakaa; (5) tortious interference with contract under North Carolina law against Rakaa; (6) tortious interference with contract under North Carolina law against Geri-Care; (7) violation of the North Carolina Unfair Trade and Deceptive Practices Act against Geri-Care and Rakaa. See id. at ¶¶ 28–65. USM alleges that Geri-Care's actions "have resulted, and are likely to continue to result, in significant damages to USM, and to other commercial interests within the state of North Carolina." Id. at ¶ 4.

II.

Geri-Care asserts that the court lacks personal jurisdiction over it. Due process requires a defendant to have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de

3

Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (alteration and quotation omitted). North Carolina's long-arm statute extends personal jurisdiction over nonresident defendants consistent with the Fourteenth Amendment's Due Process Clause. See Christian Sci. Bd. of Dirs. v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). Thus, the statutory inquiry merges with the constitutional inquiry. See id.

The extent of the defendant's contacts needed for jurisdiction turns on whether the claims asserted against a defendant relate to or arise out of the defendant's contacts with the forum state. See Brystol-Myers Squibb Co. v. Super. Ct. of Cal., 137 S. Ct. 1773, 1779–80 (2017); BNSF Ry. v. Tyrrell, 137 S. Ct. 1549, 1558–59 (2017); Walden v. Fiore, 134 S. Ct. 1115, 1121–23 (2014); Goodyear Dunlop Tire Operations, S.A. v. Brown, 564 U.S. 915, 918–29 (2011); ALS Scan, Inc. v. Digit. Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). If the defendant's contacts with the state are the basis for the suit, specific jurisdiction may exist. ALS Scan, 293 F.3d at 712. In determining specific jurisdiction, the court considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State;[1] (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Id. (alteration and quotations omitted);

---

[1] The Fourth Circuit has identified "various nonexclusive factors" for the district court "to consider" concerning purposeful availment:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 352 (4th Cir. 2020)

4

see Kurbanov, 963 F.3d at 351–52; Fidrych v. Marriot Int'l, Inc., 952 F.3d 124, 138 (4th Cir. 2020). Thus, the "constitutional touchstone" of specific personal jurisdiction "remains whether the defendant purposefully established minimum contacts in the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quotation omitted). If the defendant's contacts with the forum state are not the basis of suit, general jurisdiction may "arise from the defendant's general, more persistent, but unrelated contacts with the State." ALS Scan, 293 F.3d at 712. To establish general jurisdiction, the defendant's contacts with the forum state must be both continuous and systematic. The general jurisdiction standard is more demanding than the specific jurisdiction standard. See id.; Goodyear Dunlop Tires, 564 U.S. at 918–29; Helicopteros, 466 U.S. at 414–16.

When the court decides a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, a plaintiff need only make a prima facie showing of personal jurisdiction. See Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226 (4th Cir. 2019); Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 196–97 (4th Cir. 2018); Mylan Lab'ys, Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). In doing so, the court construes all relevant jurisdictional allegations, including affidavits the parties submit, in the light most favorable to the plaintiff and draws the most favorable inferences for the existence of jurisdiction. See Hawkins, 935 F.3d at 226; Mylan Laby's, 2 F.3d at 60. A plaintiff need not establish the existence of personal jurisdiction by a preponderance of the evidence at this stage of the litigation. See Sneha Media, 911 F.3d at 196–97. If the court decides to hold a hearing, plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence. See id. at 197; Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016).

5

The parties do not dispute the facts relevant to this motion. Accordingly, the court decides the motion without a hearing.

As for general personal jurisdiction, Geri-Care argues that a district court may only exercise general personal jurisdiction over a corporate defendant in the corporation's state of incorporation or its principal place of business. See [D.E. 11-1] 3–4. In support, Geri-Care cites Daimler AG v. Bauman, 571 U.S. 117, 137 (2014), and the Daimler Court's discussion of Goodyear Dunlop Tires, 564 U.S. at 919. See [D.E. 11-1] 3–4; Daimler, 571 U.S. at 131–33, 137–38.

USM responds that Geri-Care's "relationship[] and sales[] with USM alone" are sufficient to support general personal jurisdiction. [D.E. 13] 7. In support, USM notes Geri-Care's business across all markets in North Carolina and that Geri-Care's sales to USM in 2018 totaled over $600,000. USM then argues that Geri-Care's sales activities in North Carolina are "substantial" and exceed its total sales to USM. See id. at 6–7.

In Daimler, the Court expressly declined to hold that a district court may only exercise general personal jurisdiction over a corporate defendant in the corporations's state of incorporation or its principal place of business. See Daimler, 571 U.S. at 137 ("Goodyear did not hold that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums.") (emphasis omitted). Nevertheless, in light of the record in this case, Daimler and Helicopteros do not support exercising general personal jurisdiction over Geri-Care. See Daimler, 571 U.S. at 123 (noting defendant's sales in California accounted for 10% of defendant's U.S. business and 2.4 % of its world-wide business); Helicopteros, 466 U.S. at 418 ("[M]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident

6

corporation in a cause of action not related to those purchase transactions."). Geri-Care's three sales to USM, coupled with the fact that less than 5% of its business is in North Carolina, do not make Geri-Care "at home" in North Carolina. See Fidrych, 952 F.3d at 134 ("Because there is nothing that would distinguish Marriott's relationship with South Carolina from its relationship with any of the other states where it does business but where it is not incorporated or headquartered, this is not the exceptional case for general jurisdiction contemplated by the Daimler Court."). Accordingly, the court lacks general personal jurisdiction over Geri-Care.

As for specific jurisdiction, Geri-Care addresses ALS's three factors. First, Geri-Care asserts that it did not purposefully avail itself of this forum because it is not based in North Carolina, did not send an agent here, only communicated with USM by phone or email, did not maintain long-term business in the state, and did not make or ship the calcium carbonate tablets in North Carolina. Geri-Care then argues that "[n]o contractual act occurred in North Carolina" and the "mere act" of entering a contract is insufficient if defendant's performance occurs elsewhere, and the parties did not agree that North Carolina law governed their agreements. See [D.E. 11-1] 5–6. Second, Geri-Care argues that USM's lawsuit concerns its agreement with Geri-Care, but that the events forming the basis of the suit all took place outside of North Carolina. See id. at 6. Third, Geri-Care argues that the court's exercise of jurisdiction is constitutionally unreasonable because Geri-Care "is a New Yorker," the witnesses are in Saudi Arabia, USM can get relief in New York just as easily as in North Carolina, and the only interest that North Carolina has in the lawsuit is USM's corporate citizenship. See id. at 7. In support, Geri-Care cites ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617 (4th Cir. 1997).

USM responds that Geri-Care conducted business activities with USM for over five years,

7

and that USM's injuries arose in North Carolina out of its contacts with Geri-Care. Specifically, Geri-Care sold $600,000 in calcium tablets to USM as part of a five-year business relationship, and Geri-Care's breach of their agreement caused an estimated $1 million in damages, which USM suffered in North Carolina. USM asserts that these facts make the court's exercise of specific personal jurisdiction constitutionally reasonable. See [D.E. 13] 7–8.

As for purposeful availment, Burger King teaches that Geri-Care purposefully availed itself of this forum. Geri-Care has business relationships with North Carolina residents. Moreover, Geri-Care maintained a 5-year contractual relationship with USM. The relationship spawned two exclusive distribution agreements. The second exclusive distribution agreement contemplated a 22-month term. See Burger King, 471 U.S. at 473 ("And with respect to interstate contractual obligations, we have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." (quotation omitted)). These contacts are not "random, fortuitous, or attenuated," or "unilateral." Id. at 475 (quotations omitted). Rather, Geri-Care created "continuing obligations" between it and USM when it accepted USM's offer to serve as its exclusive and sole distributor to the Kingdom of Saudi Arabia for a 22-month period. Id. at 476. The court can reasonably infer that the 2018 agreement was sent to and received in North Carolina, and that the negotiations to arrive at the agreement were conducted over the phone or by email with USM's representatives in North Carolina. See [D.E. 11-6]; Walden, 134 S. Ct. at 1122; English & Smith v. Metzger, 901 F.2d 36, 38–39 (4th Cir. 1990). Additionally, Geri-Care's physical presence in North Carolina "is not essential" to the inquiry. Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 191 (4th Cir. 2016); see Burger King, 471 U.S. at 476. Thus, the first factor is satisfied.

8

As for whether the claims arise out of Geri-Care's activities in North Carolina, USM's claims hinge on the existence of a valid, enforceable contract with Geri-Care. The two alleged agreements form the basis of Geri-Care's connection to this forum. Thus, the second ALS factor is satisfied. See English & Smith, 901 F.2d at 38–39.

As for whether the exercise of personal jurisdiction is constitutionally reasonable, Geri-Care fails to show that this suit presents "litigation so gravely difficult and inconvenient that the party unfairly is at a severe disadvantage in comparison to its opponent." ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 392 (4th Cir. 2012) (quotations and alterations omitted); Burger King, 471 U.S. at 478. On the contrary, Geri-Care's arguments concern the relative inconvenience of litigating in North Carolina. Geri-Care can address such concerns in a motion for change of venue. See Burger King, 471 U.S. at 483–84. Moreover, contrary to Geri-Care's assertions, North Carolina "has a manifest interest in providing effective means of redress for its residents" for contract-based claims. McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957); see Burger King, 471 U.S. at 483; Zurich Ins. PLC, 685 F.3d at 393. Thus, exercising personal jurisdiction over Geri-Care is constitutionally reasonable.

In opposition, Geri-Care cites Centricut. In Centricut, nonresident defendants entered into a relationship with a nonresident third party "to gain a competitive advantage over the [plaintiff] ESAB group by making sales which the ESAB group might otherwise have made." Centricut, 126 F.3d at 625. The Fourth Circuit held that "such knowledge and intent is too attenuated to constitute a 'substantial connection' with" the forum. See id. In Centricut, the Fourth Circuit also rejected plaintiff's contention that the harm ESAB felt was independently sufficient to support specific personal jurisdiction. See id. at 625–26. Here, in contrast, the contracts at issue are between Geri-Care and USM, and Geri-Care's contacts with North Carolina extend beyond economic hurt it

9

allegedly caused USM in North Carolina. Thus, Centricut does not control, and the court finds that it has specific personal jurisdiction over Geri-Care. In light of this conclusion, the court denies USM's alternative motion to transfer.

III.

In sum, the court DENIES Geri-Care's motion to dismiss for lack of personal jurisdiction [D.E. 11].

SO ORDERED. This 27 day of October 2020.

JAMES C. DEVER III
United States District Judge

10

Case 5:20-cv-00067-D   Document 20   Filed 10/27/20   Page 10 of 10